678 S.E.2d 306

**STATE of West Virginia, Appellee,**

v.

**Jeff CORRA, Defendant Below, Appellant.**

No. 33911.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2009.

Decided Feb. 27, 2009.

James M. Cagle, Esq., Charleston, for Appellant.

Ginny Conley, Prosecuting Attorney, Sean D. Francisco, Assistant Prosecuting Attorney, Parkersburg, for Appellee.

KETCHUM, Justice:[1]

In this appeal from the Circuit Court of Wood County, defendant Jeff Corra was indicted and convicted of knowingly furnishing "alcoholic liquors" to persons under the age of 21 years in violation of *W.Va.Code,* 60–3–22a(b) [1986]. At trial, the State introduced evidence that the defendant furnished Coors Light beer to persons under the age of 21 years, and asserted that the furnishing of Coors Light was sufficient to convict the defendant of furnishing "alcoholic liquors" as alleged in the indictment. In addition, the circuit court instructed the jury that the defendant could be found guilty if he furnished "beer" to persons under the age of 21 years.

On appeal, the defendant argues that Coors Light is defined by statute as a "nonintoxicating beer" and that the indictment charging a crime under *W.Va.Code,* 60–3–22a(b) requires that "alcoholic liquor" be furnished before he could be convicted of violating this statute. Essentially, the defendant asserts that the indictment charged him with the crime of "furnishing alcoholic liquors," but the State convicted him of committing the different crime of "furnishing nonintoxicating beer."

As set forth below, we reverse the defendant's conviction.

1. Pursuant to administrative orders entered September 11, 2008 and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. Josh Tucker and Matthew Humphreys died in the wreck, and Morgan Brown was seriously injured.

## I.

### *Facts and Background*

At the time of the alleged crime, the defendant, Jeff Corra, was a 50–year–old resident of Wood County and a divorced father of a 20–year–old daughter, Ashley. On the night of August 5, 2006, Ashley invited a number of her friends to her father's home. All of her guests were under the age of 21 years.

While Ashley socialized with her friends inside the defendant's home, the defendant, at times, tended to a brushfire in an area behind his house. Because the defendant was tending to the fire, he was not constantly in the home with Ashley and her guests.

Several of Ashley's friends admitted buying and bringing beer (Budweiser) and alcoholic liquor (Jagermeister) to the appellant's house, and consuming it on the premises. The State does not contend that the defendant furnished Budweiser or Jagermeister to the persons at the party. However, some of Ashley's friends drank Coors Light beer which the defendant had previously purchased and placed in his refrigerator. Although the defendant did not give Coors Light to anyone at the party, there was testimony that the defendant knew, but did nothing to stop his daughter's friends from taking his Coors Light from the refrigerator and drinking it.

In the early morning hours of August 6, 2006, four individuals under the age of 21 left the defendant's residence together in a vehicle. The vehicle—driven by 20–year–old Courtney McDonough—left the roadway and collided with a tree. Two occupants were killed and a third was seriously injured.[2]

The State named Ms. McDonough as a defendant in the appellant's indictment charging her with various driving under the influence offenses. After her case was severed from the appellant's, Ms. McDonough entered a guilty plea to two counts of driving while under the influence of alcohol causing death (for the deaths of Mr. Humphreys and Mr. Tucker) and one count of driving while under the influence of alcohol causing injury (for the injuries caused to Ms. Brown). She was sentenced to a term of incarceration.

As a result of the investigation surrounding the car accident, the defendant was indicted on September 15, 2006 on nine counts of violating *W.Va.Code*, 60–3–22a(b) [1986] [3], which prohibits knowingly furnishing "alcoholic liquors" to persons unrelated to the defendant who are under the age of 21.[4] At trial, the circuit court instructed the jury that the defendant could be convicted under this indictment if he knowingly and intentionally furnished "beer" to a person under the age of 21 who was not related to the defendant by blood or marriage. A jury convicted the defendant on four of the nine counts.

During the trial the defendant neither moved to dismiss the indictment nor moved for a judgment of acquittal on the ground that the proof offered at trial permitted the jury to convict him of a different crime (furnishing nonintoxicating beer) than that for which he was indicted (furnishing alcoholic liquor). Instead, the defendant asserted for the first time in a motion for acquittal after trial that nonintoxicating beer is not included in the definition of alcoholic liquor. However, this motion did not assert that he was convicted of a crime not charged in the indictment or that there was insufficient evidence to prove that he furnished alcoholic liquor to persons under the age of 21 years.

In an order dated August 30, 2007, the circuit court denied the motion and sentenced the defendant to ten days incarceration for each of the four counts which were to be served consecutively and fined him $400.00.

The defendant now appeals his conviction.

## II.

### *Standard of Review*

The essence of the defendant's argument on appeal contains two parts. The defendant argues that the State failed to introduce evidence sufficient to show that he furnished "alcoholic liquors" to his daughter's underaged guests as charged in the indictment. The defendant argues that, instead, the State's evidence, along with the circuit court's instructions, amended the indictment in violation of the *West Virginia Constitution* and permitted the defendant to be convicted of an entirely different offense—furnishing "nonintoxicating beer."

When a defendant raises a sufficiency of the evidence argument, we follow the standard of review set forth in Syllabus Point 3 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior

---

**3.** *See infra*, Section III.A., for the text of *W.Va. Code*, 60–3–22a(b).

Each of the nine counts of the appellant's indictment generally used the following format (with emphasis added):

COUNT ELEVEN
West Virginia Code: 60–3–22a(b)
Providing Alcohol to Persons
Under the Age of Twenty–One
THE GRAND JURY FURTHER CHARGES: That on or about the —— day of August, 2006, in Wood County, West Virginia, JEFF CORA [sic] committed the offense of "Providing Alcohol To Persons Under the Age of Twenty–One" by knowingly and unlawfully *giving or furnishing alcoholic liquors* to Courtney McDonough, with the said JEFF CORA [sic] then and there knowing the said Courtney McDonough to be under the age of twenty-one years of age, and Courtney McDonough then and there not being related by blood.

**4.** It also appears that the appellant has been subjected to civil lawsuits by Ms. Brown, and the estates of Mr. Tucker and Mr. Humphreys. The appellant's homeowner's insurance company has also brought suit, seeking to avoid having to provide the appellant with indemnification or a defense. *See American Modern Home Ins. Co. v. Corra*, 222 W.Va. 797, 671 S.E.2d 802 (2008).

cases are inconsistent, they are expressly overruled.

However, because this case implicates the *West Virginia Constitution*, our review of the issue raised in this case is plenary. *See* Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). *In accord, Phillip Leon M. v. Greenbrier County Bd. of Educ.*, 199 W.Va. 400, 404, 484 S.E.2d 909, 913 (1996) (observing that "interpretations of the *West Virginia Constitution*, along with interpretations of statutes and rules, are primarily questions of law"). In addition, we have recognized that *de novo* review is applied when the sufficiency of an indictment is questioned. *See* Syllabus Point 2, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996).

With these standards in mind, we proceed to determine whether sufficient evidence was presented to convict the defendant of the charges for which he was indicted, and whether the circuit court committed an error of constitutional dimensions by amending the indictment returned by the grand jury.

## III.

### *Discussion*

### A.

#### *The Law Surrounding the Indictment*

We begin by noting that, from our review of the record, it is apparent that neither the prosecutor nor defense counsel read the statutes relating to the crime of furnishing "alcoholic liquors" before the jury reached its verdict. The prosecutor mistakenly informed a busy trial judge that beer was the same as alcoholic liquor for the purpose of

proving the indictment.[5] Likewise, it is not disputed that when the circuit court asked at the charge conference whether he should instruct the jury on the definition of alcoholic liquor, defense counsel stated that an instruction was not necessary because beer was an alcoholic liquor.[6]

The central theme of the trial was whether the defendant committed acts which could be considered as "furnishing beer." However, the main issue should have been whether the defendant could be convicted under an indictment charging the "furnishing of alcoholic liquor" to persons under the age of 21 years when the State could only prove the "furnishing of beer."

The indictment charged that the defendant violated a provision of Chapter 60 of the *West Virginia Code, W.Va.Code*, 60–3–22a(b), which prohibits a person from knowingly furnishing "alcoholic liquors" to persons under the age of 21 years. Specifically, *W.Va.Code*, 60–3–22a(b) states (with emphasis added):

> Any person who shall knowingly buy for, give to or furnish to anyone under the age of twenty-one to whom they are not related by blood or marriage, any *alcoholic liquors* from whatever source, is guilty of a misdemeanor and shall, upon conviction thereof, be fined in an amount not to exceed one hundred dollars or shall be imprisoned in the county jail for a period not to exceed ten days, or both such fine and imprisonment.

Chapter 60 has two definitions of "alcoholic liquor" that, read as a whole, are nearly identical. First, Chapter 60 briefly defines "alcoholic liquor" by making reference to "nonintoxicating beer." *W.Va.Code*, 60–1–5 [1986] states:

> For the purposes of this chapter: . . .
>
> "Nonintoxicating beer" shall mean any beverage, obtained by the fermentation of

---

**5.** At a pretrial hearing, the circuit court summarized the State's position stating:

> So again, one more time, the State's theory of the case is there was beer in Mr. Corra's refrigerator and that he facilitated a party on his premise and built a bonfire.

**6.** During arguments on the motion for acquittal the circuit court stated:

Number 4, the definition of alcoholic beverage, I remember specifically we discussed this at the charge conference. It may not have been on the record, but I even questioned should we give the jury a definition of alcoholic liquor, and the defense, I believe, took the position that was not necessary that they agreed it was beer and there was no issue there.

The circuit court's statement was not disputed.

barley, malt, hops, or similar products or substitute, and containing not more alcohol than that specified by section [three], article sixteen, chapter eleven. . . .

"Alcoholic liquor" shall include alcohol, beer, wine and spirits, and any liquid or solid capable of being used as a beverage, but shall not include nonintoxicating beer. . . .

As this statute makes clear (a) alcoholic liquor is not nonintoxicating beer, and (b) the alcohol content of nonintoxicating beer is set forth *W.Va.Code*, 11–16–3 [1991].

Another part of Chapter 60 provides a similar definition of alcoholic liquor and nonintoxicating beer. *W.Va.Code*, 60–3–22(a) [1993] [7] states that the meaning of the phrases "alcoholic liquors" and "nonintoxicating beer" are to be found by referring to the nonintoxicating beer chapter of the *West Virginia Code*, Chapter 11—specifically, *W.Va. Code*, 11–16–3. *W.Va.Code*, 11–16–3(5) states (with emphasis added):

"Nonintoxicating beer" shall mean all cereal malt beverages or products of the brewing industry commonly referred to as beer, lager beer, ale and all other mixtures and preparations produced by the brewing industry, including malt coolers and containing at least one half of one percent alcohol by volume, but not more than four and two-tenths percent of alcohol by weight, or six percent by volume, whichever is greater, all of which are hereby declared to be nonintoxicating and *the word "liquor" as used in chapter sixty of this code shall not be construed to include or embrace nonintoxicating beer nor any of the beverages, products, mixtures or preparations included within this definition.*

This statute, too, makes it clear that the Legislature intended for "nonintoxicating beer" and "liquor" to be treated differently in Chapter 60 of the *W.Va.Code*, and makes it clear that alcoholic liquors have more alcohol content than nonintoxicating beers.

Reading these statutory definitions in light of the evidence produced at trial, it is clear that there is no evidence that the defendant made "alcoholic liquors" available to his daughter's underage guests. At oral argument before this Court, the State conceded that it failed to produce evidence that the Coors Light—the only beverage that the defendant was alleged to have furnished to his daughter's under-aged guests—had the alcohol content required to render it an "alcoholic liquor."

Moreover, at oral argument the State confessed error, said the defendant was indicted under the wrong statute, and agreed that the defendant should have been indicted for furnishing nonintoxicating beer under a completely different statute, *W.Va.Code*, 11–16–19(c) [2005].[8]

Nevertheless, the State argues that any error in charging the defendant with violating the wrong statute was waived, because defense counsel never raised this objection before the jury returned its verdict. The State noted that defense counsel also had agreed in the charge conference that beer was alcoholic liquor and told the circuit court that "there was no issue there." The State further asserts that the defendant invited error by telling the circuit court that it was not necessary to instruct the jury on the definition of "alcoholic liquor" because beer was alcohol. As previously noted, based upon bad information from both the prosecutor and defense counsel, the trial judge instructed the jury that they could find the

---

**7.** *W.Va.Code*, 60–3–22(a) states:

Alcoholic liquors and nonintoxicating beer as defined in section three, article sixteen, chapter eleven of this code shall not be sold to a person who is:
(1) Less than twenty-one years of age;
(2) An habitual drunkard;
(3) Intoxicated;
(4) Addicted to the use of any controlled substance as defined by any of the provisions of chapter sixty-a of this code; or
(5) Mentally incompetent.

**8.** *W.Va.Code*, 11–16–19(c), which criminalizes furnishing nonintoxicating beer to individuals under the age of 21 years, states:

Any person who shall knowingly buy for, give to or furnish nonintoxicating beer to anyone under the age of twenty-one to whom they are not related by blood or marriage is guilty of a misdemeanor and, upon conviction thereof, shall be fined an amount not to exceed one hundred dollars or shall be imprisoned in jail for a period not to exceed ten days, or both such fine and imprisonment.

defendant guilty if he knowingly furnished beer to the persons at the party. The State therefore argues that the trial court's instructions were proper because they "adequately conveyed the essence of the crime."

### B.

*Convicted of Charges Not in the Indictment*

There is no doubt that the defendant was convicted of a different crime than that for which he was indicted. He was indicted for "furnishing alcoholic liquor" but convicted of "furnishing nonintoxicating beer." The *West Virginia Constitution* provides that a defendant can only be convicted of the offense for which he or she has been fully and plainly charged. *See W.Va. Const.*, Article III, Section 4 ("No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury.") and Article III, Section 14 ("In all such trials [of crimes and misdemeanors], the accused shall be fully and plainly informed of the character and cause of the accusation[.]"). *See also*, Syllabus Point 1, *State v. Blankenship*, 198 W.Va. 290, 480 S.E.2d 178 (1996); *U.S. Const.*, Amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]"). No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948); *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

The State argues that there are a litany of statutes dealing with furnishing alcohol to persons under the age of 21 throughout the West Virginia Code.[9] It contends that the legislative intent for these statutes seeks to prevent the drinking of alcohol and the distribution of alcohol by and to individuals under the age of 21. The State insists that, in the context of legislative intent as a whole with respect to all of these *Code* sections, it would only be logical that non-intoxicating beer is encompassed within the charging statute, *W.Va.Code*, 60–3–22a(b).

However, this logic does not meet our notion of due process. Criminal statutes should be narrowly and strictly construed in favor of a defendant in order to conform to constitutional notions of due process. "Fairness dictates that individuals be able to know, within reason, precisely what conduct is prescribed under a criminal statute." *State v. Miller*, 197 W.Va. 588, 599, 476 S.E.2d 535, 546 (1996).

The law in West Virginia requires that any substantial amendment to an indictment, direct or indirect, must be resubmitted to the grand jury. A direct amendment is one made by the trial judge and is permissible "provided the amendment is not substantial, is sufficiently definite and certain, does not take the defendant by surprise, and any evidence the defendant had before the amendment is equally available after the amendment." Syllabus Point 2, in part, *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995).

When the evidence at trial differs from the allegations in the indictment, then a variance has occurred. It is only when the defendant is prejudiced by the variance that a reversal is required. *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir.1996). However, not every variation between an indictment and proof at trial creates reversible error. *State v. Johnson*, 197 W.Va. 575, 581–82, 476 S.E.2d 522, 528–29 (1996).

---

9. *See, e.g.*, *W.Va.Code*, 11–16–19(c) (prohibits a person from buying, giving or furnishing nonintoxicating beer to anyone under the age of twenty-one); *W.Va.Code*, 60–3–22(a)(1) (prohibits the sale of alcoholic liquors and nonintoxicating beer to anyone under the age of twenty-one); *W.Va. Code*, 60–3–22a(b) (the statute at issue in the instant case, which prohibits buying, giving or furnishing alcoholic liquors to anyone under the age of twenty-one); *W.Va.Code*, 60–7–12a(c) [1993] (prohibits a person from buying, giving or furnishing nonintoxicating beer, wine or alcoholic liquors purchased from a licensed dealer); *W.Va.Code*, 60–8–20a(c) [1993] (prohibiting a person from buying, giving or furnishing "wine or other alcoholic liquors" to anyone under the age of twenty-one).

On the one hand, many cases have recognized several types of variance that do not prejudice the defendant:

(1) When the variance or amendment of the indictment is one of form only. *See, e.g.,* Syllabus Point 3, *State v. Adams, supra* (indictment could be changed to correct name of owner of stolen goods).

(2) When the proof at trial merely narrowed the basis for conviction and did not broaden the charges beyond what was in the indictment. *See, e.g., United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (conviction upheld when indictment alleged two methods by which defendant defrauded his insurer, but proof at trial showed only one of those two methods).

(3) Where the date of the crime in the indictment and the date proven that the crime actually occurred differs. *See, e.g.,* Syllabus Point 4, *State v. Chaffin,* 156 W.Va. 264, 192 S.E.2d 728 (1972) ("A variance in the pleading and the proof with regard to the time of the commission of a crime does not constitute prejudicial error where time is not of the essence of the crime charged").

(4) Typographical errors that do not affect the substance of the allegations in the indictment. *See, e.g., United States v. Morrow,* 925 F.2d 779 (4th Cir.1991) (omission of the first digit in a seven digit serial number of the firearm set forth in the indictment did not result in a substantial amendment).

(5) When the proof at trial does not add anything new to the charges. *See, e.g., United States v. Redd,* 161 F.3d 793 (4th Cir.1998) (indictment stating that defendant used a black revolver during bank robbery was not constructively amended when proof offered at trial indicated that he used silver revolver).

■ On the other hand, when either the evidence or the jury instructions, or both, vary materially and prejudicially from the charge contained in the indictment, there is a constructive amendment of the indictment and any conviction under the indictment cannot stand and must be reversed. As we held in Syllabus Point 3 of *State v. Nicholson,* 162 W.Va. 750, 252 S.E.2d 894 (1979):

A conviction based upon evidence that varies materially from the charge contained in the indictment cannot stand and must be reversed.

Similarly, as we said in Syllabus Point 1 of *State v. Blankenship,* 198 W.Va. 290, 480 S.E.2d 178 (1996):

An instruction which informs the jury that it can return a verdict of guilty of a crime charged in the indictment by finding that the defendant committed acts constituting a crime not charged in the indictment is reversible error.

*See also,* Syllabus Point 2, *State v. Schoolcraft,* 183 W.Va. 579, 396 S.E.2d 760 (1990) ("Although an indictment may contain more than one charge, a defendant can be convicted only of those charges which were prosecuted at trial."). Any substantial amendment to the indictment must be resubmitted to the grand jury. Syllabus Point 3, in part, *State v. Adams,* 193 W.Va. 277, 456 S.E.2d 4 (1995). *In accord,* Syllabus Point 2, *State v. Johnson,* 197 W.Va. 575, 476 S.E.2d 522 (1996).

■ Generally, there are two categories of constructive amendments (fatal variances), both of which constitute reversible error. They are:

(1) When the evidence produced at trial is different from the charges in the indictment which allows the jury to convict the defendant of a crime for which he was not indicted; *see* Syllabus Point 3, in part, *State v. Johnson, supra,* ("[I]f the defendant is misled, is subjected to an added burden of proof, or is otherwise prejudiced, the difference between the proof at trial and the indictment is an actual or a constructive amendment of the indictment which is reversible error."); and

(2) When a jury instruction allows the jury to convict the defendant of a crime for which he was not indicted. *See* Syllabus Point 1, *State v. Blankenship, supra.*

■ The difference between a harmless variance and a reversible constructive amendment (fatal variance) was said best by Justice McHugh in Syllabus Point 3 of *State v. Johnson, supra:*

If the proof adduced at trial differs from the allegations in an indictment, it must be

determined whether the difference is a variance or an actual or a constructive amendment to the indictment. If the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced, then the difference between the proof adduced at trial and the indictment is a variance which does not usurp the traditional safeguards of the grand jury. However, if the defendant is misled, is subjected to an added burden of proof, or is otherwise prejudiced, the difference between the proof at trial and the indictment is an actual or a constructive amendment of the indictment which is reversible error.

■ "Whether the difference between the indictment and proof adduced at trial is merely a variance or whether the difference is an actual or a constructive amendment of the indictment will have to be determined on a case-by-case basis." *State v. Johnson*, 197 W.Va. at 582, 476 S.E.2d at 529.

There is no doubt that a substantial variation amounting to a constructive amendment of the indictment occurred in this case. The

proof and the jury instructions both added new charges which are not minor discrepancies from the body of the indictment.

The State contends that the defendant waived any error regarding the constructive amendment and invited the circuit court to instruct the jury that beer was the same as alcoholic liquor.[10]

■ We believe that, even if the record demonstrated that the defendant waived, forfeited or invited error, the jury verdict must be reversed. This is because . . .

. . . [o]ur decisions hold that a fundamental principle stemming from Section 5 of Article III of the *West Virginia Constitution* is that a criminal defendant only can be convicted of a crime charged in the indictment. Incident to this constitutional guarantee is the longstanding principle of our criminal justice system that charges contained in an indictment may not be broadened through amendment, except by the grand jury itself.

*State v. Miller*, 197 W.Va. at 599–600, 476 S.E.2d at 546–47. "When a defendant is convicted of charges not included in the in-

---

**10.** This Court has previously held that "A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syllabus Point 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966). Further, we have held that:

> "Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences.

*State v. Crabtree*, 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996).

However, while it is the general rule that an invited error cannot form the basis for reversible error, we have on limited occasions found that the "plain error" doctrine nonetheless requires reversal when a fundamental right is involved. *State v. Redden*, 199 W.Va. 660, 487 S.E.2d 318 (1997) (plain error doctrine will be applied to errors involving a fundamental right notwithstanding that the error was invited).

In the analogous case of *State v. Miller*, 184 W.Va. 367, 400 S.E.2d 611 (1990) this Court was asked to consider whether a defendant's participation in offering jury instructions that failed to instruct the jury on the essential elements of the offense constituted "invited error" and precluded the defendant from benefitting from that error. We found that it did not. In so finding, we reaffirmed in *Miller* our prior holdings that "[u]ltimately, the responsibility to ensure in criminal cases that the jury is properly instructed rests with the trial court," *State v. Lambert*, 173 W.Va. 60, 63, 312 S.E.2d 31, 34 (1984), and that "[f]ailure to afford a criminal defendant the fundamental right to have the jury instructed on all essential elements of the offense charged has been recognized as plain error." *State v. Barker*, 176 W.Va. 553, 558, 346 S.E.2d 344, 349 (1986).

In the present appeal, it is clear that the trial court failed to properly instruct the jury on an essential element of an offense charged in the indictment. The fact that defendant's counsel may have "invited" that error—implicitly or as a trial strategy—does not negate our prior holdings that it is, at the end of the day, the trial court's obligation to get it right. We therefore find the State's argument that the error at issue was "invited error" from which the defendant should not benefit unpersuasive—the accused has a fundamental right to have the jury instructed on the essential elements of the offense charged and that did not occur in this case. *Miller, supra*.

dictment, an amendment has occurred which is *per se* reversible error." *United States v. Fletcher*, 74 F.3d at 53. *In accord, United States v. Redd*, 161 F.3d at 795.

We therefore hold that when a defendant is charged with a crime in an indictment, but the State convicts the defendant of a charge not included in the indictment, then *per se* error has occurred, and the conviction cannot stand and must be reversed. We wish to make clear, however, that under this holding a defendant may still be convicted of a crime that is a lesser-included offense of the primary offense—the key is that the primary offense must be fully and plainly charged in the indictment, such that a defendant may be on notice to mount a defense to both the primary offenses and any lesser-included offense.

In the case at bar, the variation between the indictment and the evidence, along with the jury instruction, "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error. The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 217–18, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (citation omitted).

Therefore, we conclude that the defendant's conviction must be reversed. Because there was insufficient evidence to convict the defendant of the charges for which he was indicted, a retrial is prohibited. *See*, Syllabus Point 2, *State v. Clayton*, 173 W.Va. 414, 317 S.E.2d 499 (1984) ("Our State and federal double jeopardy clauses prohibit retrial of a defendant on any charge for which he has received a judgment of acquittal or a court's determination that there was insufficient evidence to prove that charge at his first trial.").

## IV.

### *Conclusion*

The circuit court's August 30, 2007 order is reversed.

Reversed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.