No. 21-0404 – *State of West Virginia ex rel. Scott R. Smith, Prosecuting Attorney, Ohio County v. The Honorable Michael J. Olejasz, Judge of the Circuit Court of Ohio County, West Virginia, and Chandis Wesley Linkinogger, Defendant.*

**FILED**
**November 19, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Wooton, Justice, concurring:

I concur in the Court's judgment that under the facts and circumstances of this case, the Circuit Court of Ohio County committed clear legal error in dismissing the two counts of sexual assault in the second degree as a discovery sanction, and that for this reason, the State is entitled to a writ preventing the circuit court from enforcing any of the rulings set forth in the court's April 22, 2021, order. I write separately, however, to address several points in the majority opinion which I find to be troubling.

At the outset, I found this case to be a close one. Without question, in his argument to the circuit court in support of the motion to dismiss defense counsel was guilty of obfuscation, if not actual misrepresentation. Further, the fact that he waited until the second day of trial to move to dismiss the indictment, *after* the jury had been seated and sworn, gives rise to a strong suspicion that the discovery dispute in this case was manufactured – pure gamesmanship from the outset. However, the assistant prosecutor was likewise not free from fault; he failed to grasp that the circuit court might not (and in fact did not) agree with his assessment that the sought-after forensic evidence was immaterial to the case against the petitioner, in light of his anticipated defense of consent. Once the court ordered accelerated disclosure of forensic evidence from the state police laboratory,

1

it was incumbent on the prosecutor to follow his own advice, without delay: "[W]hen it comes to the [lab], you have got to get on their tails and tell them 'I need this, I need this, I need this.'" Nonetheless, by his own admission to the circuit court, "I didn't do that in this case[.]" As a result, the circuit court was justifiably frustrated when, on the morning trial began, the lab results had still not been produced.

It is well established in our case law that a circuit judge has broad discretion to control his or her docket. *See*, *e.g.*, *State v. Boyd*, No. 17-1067, 2019 WL 2406729, at *4 (W. Va. June 7, 2019) (memorandum decision) ("Under the circumstances now before us, and in light of the circuit court's unique familiarity with the factors that would impede the expeditious administration of justice, we find no reason to disturb the 'broad discretion' conferred on the trial court for the management of its docket.") (citing *Barlow v. Hester Indus, Inc.,* 198 W. Va. 118, 127, 479 S.E.2d 628, 637 (1996)). Nonetheless, for the circuit court to dismiss the sexual assault counts, with prejudice, and declare a mistrial on the burglary and strangulation counts, was so precipitous – and so without precedential support – as to be "clearly erroneous as a matter of law" within the meaning of syllabus point four of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1997). First, as far as we can ascertain from the record before us, the petitioner, Chandis Wesley Linkinogger, had not demanded his statutory right to be tried in the term of indictment.[1] Moreover, there was no speedy trial issue raised under these facts and circumstances. "'It is the three-term rule,

---

[1] W. Va. Code § 62-3-1 (2020).

2

W. Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution.' Syllabus point 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986)." Syl. Pt. 2, *State ex rel. Porter v. Farrell*, 245 W. Va. 272, __, 858 S.E.2d 897, 899 (2021). Second, the facts and circumstances of this case were far removed from those present in *State ex rel. Rusen v. Hill*, 193 W. Va. 133, 454 S.E.2d 427 (1994), where this Court held that "[a] circuit court may choose dismissal for egregious and repeated violations where lesser sanctions such as a continuance would be disruptive to the administration of justice or where the lesser sanctions cannot provide the same degree of assurance that the prejudice to the defendant will be dissipated." *Id*. at 135, 454 S.E.2d at 429, Syl. Pt. 3. Here, the State's failure to produce lab reports within one month of being ordered to do so was a singular failure, not part of a pattern of repeated violations. A continuance of the trial would not have caused demonstrable prejudice to the petitioner; indeed, it would have enabled him to utilize the lab reports that he contended were key to his defense that the victim was high on drugs and thus a willing participant in so-called "rough sex" that included strangulation. *See State ex rel. Smith v. Olejasz*, No. 20-1028, 2021 WL 5177341, at *5-6 (W. Va. filed Nov. 8, 2021) (memorandum decision) (discussing preference for continuances where the State's production of discovery is delayed). Third, it is critical to recall that production of the lab reports was not attributable to any negligence or malfeasance on the part of the State – other than, perhaps, a failure to nag often and/or loudly enough – but rather delay attributable to the state police lab, an entity over which the State had no control. *See id*. at *6 (rejecting argument that the State was properly

3

sanctioned for delay in producing autopsy report, where the delay was caused by the State Medical Examiner's Office over which the State exercised no control).

My first area of concern with the majority opinion is in the Court's unquestioning acceptance of the proposition that in cases where the State seeks extraordinary relief, "[t]he scope of appellate review must necessarily be an abuse of discretion standard." *Rusen*, 193 W. Va. at 140, 454 S.E.2d at 434. This formulation, although contained in the body of the *Rusen* opinion, is nowhere to be found in the syllabus points. Instead, as stated in syllabus point one, in criminal cases where the State seeks a writ of prohibition the scope of appellate review is confined to cases where the circuit court has "exceeded or acted outside its jurisdiction[.]" *Id*. at 135, 454 S.E.2d at 429, Syl. Pt. 1, in part. The scope of review as set forth in the syllabus point of *Rusen* squarely aligns with the now-virtually canonical test established in *Hoover*, which was decided three years after *Rusen*. However, the scope of review set forth in the body of *Rusen*, dutifully recited by the majority in this case, does not. *See, e.g.*, Syl. Pt. 3, in part, *State ex rel. Almond v. Rudolph*,[2] 238 W. Va. 289, 794 S.E.2d 10 (2016) ("[T]his Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention

---

[2] Although this case appears in both the West Virginia Reports and the South Eastern Reporter as *State ex rel. Almond v. Rudolph*, the correct title should be *State ex rel. Almond v. Murensky*. The Honorable Rudolph J. Murensky, Jr., a long-serving circuit judge in McDowell County, West Virginia, was the respondent in the petition for relief

of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts[.]").

I acknowledge that an argument can be made – and indeed, has been made – that in criminal cases where the State seeks extraordinary relief, the *Hoover* factors are weighted differently "because the State has no right to appeal [a discretionary ruling], it has no other means to obtain relief from the circuit court's ruling." *State ex rel. Wade v. Hummel*, 243 W. Va. 408, 415, 844 S.E.2d 443, 450 (2020); *see also Hoover*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4. The problem with this statement is that its application, standing alone, has the potential to cut far too broadly; under the *Wade* rationale the State could seek review of *any* adverse ruling on a writ. In this regard, the Court must be mindful of the admonition that "if this Court is to retain its proper role[,]" we must "develop some level of judicial discipline to curb [our] apparent eagerness to become involved in the merits of every case [brought on a request for extraordinary relief.]" *State ex rel. Justice v. King*, 244 W. Va. 225, __, 852 S.E.2d 292, 310 (2020) (Workman, J., concurring). Because I share the concern voiced by Justice Workman, I would eschew reliance on the legally shaky proposition that as long as the State is the petitioner, this Court can correct any abuse of discretion on a writ. Instead, I would require the State to show, as its basis for seeking extraordinary relief, that the circuit court's ruling was a substantial, clear-cut, legal error. In my view, the State made such a showing in this case, and it is for

that reason I concur with the Court's judgment that the Prosecuting Attorney of Ohio County was entitled to issuance of a writ of prohibition.

Finally, I take issue with the Court's reliance on *State v. Adkins*, 170 W. Va. 46, 289 S.E.2d 720 (1982), cited and discussed at length in footnote two, for the proposition that "double jeopardy is only triggered when the action taken is equated to an acquittal[.]" *Id*. at 51, 289 S.E.2d at 724-25. First, in footnote two the majority devotes some 500 words to discussing what it then concedes to be obiter dicta, inasmuch as the circuit court's dismissal of the sexual assault counts in this case "cannot be equated as an acquittal." Thus, the lengthy discussion of *Adkins* is wholly beside the point and unnecessarily complicates what should be the holding in this case: double jeopardy does not apply to bar a retrial on the sexual assault counts because the court's dismissal of those counts came in response to the petitioner's motion – a motion based on what the record conclusively shows to have been a misrepresentation of the facts by defense counsel.

> """When a mistrial is granted on motion of the defendant, unless the defendant was provoked into moving for the mistrial because of prosecutorial or judicial conduct, a retrial may not be barred on the basis of jeopardy principles." *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416, 427 (1982).' *State v. Pennington,* 179 W.Va. 139, 365 S.E.2d 803 (1987)."

*State ex rel. Bass v. Abbot*, 180 W. Va. 119, 375 S.E.2d 590 (1988); *see also* Syl. Pt. 3, in part, *State v. Elswick*, 225 W. Va. 285, 693 S.E.2d 38 (2010).

Second, I would place no reliance on *Adkins*, as the case upon which the *Adkins* Court relied, *State v. Bennett*, 157 W. Va. 702, 203 S.E.2d 699 (1974), was subsequently overruled in *State v. Petry*, 166 W. Va. 153, 273 S.E.2d 346 (1980).[3] In *Adkins* the petitioner was convicted of first-degree murder. Significantly, he was charged and convicted as a principal – indeed, as the sole perpetrator of the crime. *Id*. at 51, 289 S.E.2d at 724-25. On appeal, the Court found that the evidence at trial had established nothing more than aiding and abetting, which, under *Bennett*, would have entitled him to a directed verdict of acquittal because "[a]n accused who is indicted solely as a principal in the first degree is entitled to a directed verdict of acquittal upon proof by the State that he was only a principal in the second degree." *Adkins*, 170 W. Va. at 49, 289 S.E.2d at 722. Then, in a feat of legal gymnastics, the Court held that petitioner Adkins was "entitled to a directed verdict of acquittal due to a variance between pleading and proof[,]" and could be retried on a different theory, aiding and abetting, because "the 'acquittal' . . . was not based upon 'a resolution . . . of some or all of the factual elements of the offense charged.'" *Id*.

This holding – which, tellingly, was not reflected in any syllabus points in *Adkins* – was based on an acquittal that was wholly theoretical, making it impossible for a reviewing court to determine its basis. Thus, any discussion of whether the non-existent "acquittal" was based on "prosecutorial or judicial 'bad faith,' including evidentiary

---

[3] Because *Petry* had not yet been decided at the time defendant/petitioner Adkins was indicted and tried, the *Adkins* Court found that *Bennett*, not *Petry*, was the basis for decision.

insufficiency,"[4] was rank speculation. Additionally, the Court's logic in *Adkins*, which was untethered to any analysis of the facts of the case, would lead to an absurd result; in *any* criminal case an acquittal can be said to be a variance between pleading (the indictment alleging commission of a specified crime) and proof (the evidence failing to prove commission of that crime). Accordingly, we clarified in *State v. Corra*, 223 W. Va. 573, 678 S.E.2d 306 (2009), that "[i]f the proof adduced at trial differs from the allegations in an indictment, it must be determined whether the difference is a variance or an actual or a constructive amendment to the indictment." *Id.* at 581-82, 678 S.E.2d at 314-15 (citation omitted).[5] In *Adkins*, it can hardly be gainsaid that where the indictment charged the defendant with murder, but the proof established his guilt only of aiding and abetting – which, pursuant to *Bennett*, was a wholly separate offense from the charged offense of murder – there was a constructive amendment to the indictment. Accordingly, pursuant to *Corra*, "[b]ecause there was insufficient evidence to convict the defendant of the charges for which he was indicted, a retrial is prohibited." 223 W. Va. at 583, 678 S.E.2d at 316.

In short, the majority weakens the authority of its opinion by engaging in a lengthy discussion, albeit in a footnote, of a case whose legal underpinnings do not rest on

---

[4] *Adkins*, 170 W. Va. at 51, 289 S.E.2d at 724-25.

[5] A constructive amendment deprives a defendant of his or her rights under article III, section 4 of the West Virginia Constitution, which provides in relevant part that "[n]o person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury."

solid ground. This observation has even greater force where the discussion is nothing but dicta, which unnecessarily complicates what is a straightforward legal question deserving of a straightforward legal answer.

For the reasons set forth herein, I respectfully concur.